IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PAGE COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>Page County Board of Supervisors<br>117 South Court Street<br>Luray, Virginia, 22835 | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MICHAEL B. MUKASEY,<br>Attorney General of the<br>United States of America,<br>GRACE CHUNG BECKER,<br>Acting Assistant Attorney General,<br>Civil Rights Division,<br>United States Department of Justice,<br>Washington, DC, 20530 | ) ) ) ) ) ) ) ) ) | Civil Action No. 08-cv-01113<br><br>(LFO-JWR-CKK)<br>(three-judge court) |
| Defendants. | ) ) | |

STIPULATION OF FACTS

This action was initiated by Page County, a political subdivision of the

Commonwealth of Virginia (hereinafter "the County"). The County seeks a declaratory

judgment pursuant to Section 4(a) of the Voting Rights Act of 1965, as amended, 42

U.S.C. § 1973(b).

The parties have jointly moved this three-judge Court for entry of a Consent

Judgment and Decree to resolve this action. In support of that motion, the parties have

entered into the following Stipulation of Facts. The facts in this stipulation may be

received into evidence in lieu of further proof or testimony.

It is hereby stipulated, by and between the respective parties, that:

1. Plaintiff Page County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1). Page County is located between the Blue Ridge and Massanutten Mountains in Virginia's Shenandoah Valley region, 90 miles outside of Washington, D.C. The County has a land area of approximately 314 square miles.

2. Located within Page County are the Towns of Luray, Stanley, and Shenandoah. Census figures from 2000 indicate that: the Town of Luray has a total population of 4,871 persons, of which 5.5% are black and 1.4% are Hispanic or Latino; the Town of Stanley has a population of 1,326 persons, of which 2.1% are non-white, and 2.5% are Hispanic or Latino; and the Town of Shenandoah has a population of 1,878 persons, of which 1.3% are black and 1.5% are Hispanic or Latino.

3. Residents of the Towns are eligible to participate in town elections and in County elections. The Towns are governed by their respective Town Councils, each of which is elected at-large. The Town of Luray has a six-member Town Council; the Town of Stanley has a five-member Town Council; and the Town of Shenandoah has a six-member Town Council.

4. Page County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. § 1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964, coverage date for Virginia.

5.  Page County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election.  42 U.S.C. § 1973b(b).  The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors.  Va. Const. Art. II, Sec. 20 (1902).  The literacy test was repealed by the Virginia Constitution of 1972.

6.  The Page County Board of Supervisors is the legislative body that formulates policies for the administration of government in Page County.  It is comprised of six Supervisors who are elected to serve four-year terms.  One Supervisor is elected at large, and the other five Supervisors are elected from single-member districts.  The chief administrative officer of the County government, the County Administrator, is appointed by and serves at the pleasure of the Page County Board of Supervisors.  The general day to day operations of Page County are controlled by the Office of the County Administrator.   Like the Board of Supervisors, the Page County School Board is comprised of six members, one of whom is elected at large, and five of whom are elected from the same single-member districts as are members of the Board of Supervisors.  *See* VA. CODE ANN. §§ 15.2-1212 and 15.2-1213; VA. CODE ANN. §§ 15.2-1540 and 15.2-1541.

7.  According to the 2000 census, Page County, Virginia has a total population of 23,177.  Of this number, 501 persons (or 2.2%) are African-American and 251 persons

(or 1.1%) are Hispanic.  The voting age population of the County (18 years of age or older) is 17,854 persons (77.0% of the total population).  Of this number, 358 persons (or 2.0%) are African-American and 151 persons (or 0.5%) are Hispanic or Latino.

8.  Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race.  Current data show, however, that a significant proportion of the County's voting age population is registered to vote.  As of 2007, there were 14,691 registered voters in Page County, approximately 63.4% of the County's voting age population.

9.  The number of registered voters in the County has steadily risen over the last ten years.  In 1997, for example, there were 11,121 registered voters in the County.  By 2003, the number of registered voters had grown to 13,633.  The number of registered voters in the County has continued to grow.  As of 2007, there were 14,691 registered voters in the County.  Thus, from 1997 to 2007, the total number of registered voters in the County has increased 32% (from 11,121 in 1997 to 14,691 in 2007).

10.  Voter turnout in elections within Page County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election.  In the last two Presidential election years (2000 and 2004), for example, 66% and 68% of the County's registered voters turned out to vote, respectively.  In the General Elections for state and county offices held in November 1999, 2001, 2003, 2005, and 2007, 61%, 44%, 54%, 44%, and 51% of the County's registered voters turned out to vote, respectively.

11.  There are presently a total of five polling places in Page County, located conveniently to voters across the County: Springfield School, Luray Veterans of Foreign Wars Building, Stanley Fire House, Stanley Elementary, and Shenandoah Veterans of

4

Foreign Wars Building. *See* Code of Page County, Virginia § 12-2. All polling places in the County are accessible to voters with physical disabilities.

12. Pursuant to § 24.2-712 of the Code of Virginia, the County established a central absentee voting precinct in the Board of Supervisors' meeting room, located in the County Courthouse in Luray, for the purpose of receiving, counting, and recording absentee ballots cast in the County.

13. Minority candidates have a history of electoral success in Page County. William "Wayne" Taylor, an African-American candidate, was elected to the Luray Town Council in 1982, 1986, 1990, and 1994. In addition to Mr. Taylor's service, another African-American candidate, Audrey Smith, was appointed to the Luray Town Council in 1981 and was subsequently elected in 1984. Finally, an African-American candidate, William Boyden, was elected to the Luray Town Council in 1974 and served one term.

14. Since 1997, Page County has submitted 16 voting changes to the United States Department of Justice seeking preclearance under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Not a single objection has been interposed by the Department of Justice to any of the changes submitted.

15. Within the ten years preceding the filing of this action, Page County has not enforced any voting changes prior to Section 5 preclearance. Nor has the Attorney General interposed a Section 5 objection to any change affecting voting in Page County within the past ten years. The County has not sought judicial preclearance of any voting changes in this Court.

16.  Voter registration opportunities in the County are readily and equally available to all citizens.  The voter registration office is open 9:00 a.m. to 5:00 p.m. weekdays.  The General Registrar's office is five blocks (walking distance) from the center of the only minority area in Page County.  In addition, the General Registrar took the initiative to hold voter registration drives in the Bethel Baptist Church, which serves a majority of the minority population concentration in Luray, Virginia, the County seat.

17.  Voters in Page County may also register by mail, and voter registration applications are available at locations convenient to voters throughout the County.  Voter registration applications are also available at all Page County post offices, all County social services offices, and at all three public libraries in the County.  Voter registration applications also can be downloaded online.

18.  The Page County Voter Registrar visits all three high schools in the County – two public schools, and one private school – each Fall to register voters.

19.  The opportunity to become a registered voter in Page County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicles ("DMV") offices and at all public assistance agencies in Page County.  The opportunities for persons to register to vote in Page County have been made more convenient and available as a result of implementation of the NVRA.

20.  Page County has a three-member Electoral Board, appointed pursuant to Virginia state law.  Members serve for three-year terms.  The Electoral Board has responsibility under Virginia law for overseeing the election process in the County, including the appointment of poll workers to conduct elections.  VA. CODE ANN. § 24.2-

115 (2007).  The two major political parties submit names of potential poll workers to the Electoral Board for approval.

21.  Over at least the last ten years, no person recommended to serve as a poll official has been rejected by the Electoral Board. Records from 2001 through 2008 show that the percentage of African-American poll workers employed by Page County has approximated (and slightly exceeded) the percentage of Page County's African-American voting age population (2%).   Several minorities have been or continue to be Officers of Election for the County.  For example, in 2001, 2.7 % of the election officials were minority group members.  In the 2006, 2007, and 2008 elections, 2.5%, 1.9%, and 2.2% of the poll officials were minority group members, respectively.

22.  There is no evidence that any person in Page County has been denied the right to vote on account of race, color, or membership in a language group for at least the preceding ten years.

23.  No "test or device" as defined in the Voting Rights Act (42 U.S.C. § 1973b(c)) has been used in Page County as a prerequisite to either registering or voting for at least the preceding ten years.

24.  No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in Page County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against Page County alleging such denials or abridgments of the right to vote.

25.  No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

26.  Page County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County.  Minority voters in Page County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors or to the Luray, Stanley, or Shenandoah Town Councils or to the Page County School Board.

27.  Federal examiners have never been appointed or assigned to Page County under Section 3 of the Voting Rights Act, 42 U.S.C. § 1973a.

28.  Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in Page County within the last ten years, neither the County nor any of its governmental units have had any occasion to eliminate such activity.

29.  Pursuant to 42 U.S.C. § 1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices."  A Notice of Intent to Seek a Bailout and a proposed settlement of this action was published by the County in the *Daily News Record* on June 26, 27, and 28, 2008, and was also published in the *Page News and Courier* on July 3, 2008.  This Notice was also delivered with a request that it be posted at post offices throughout the County, and at various County offices, including the county social services office, the county courthouse, the voting registration office, and various libraries throughout the County.

30. The United States has determined that it is appropriate to consent to a declaratory judgment in this action, pursuant to Section 4(a)(9) of the Voting Rights Act. This consent is premised upon an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

31. The United States' consent in this action is based upon its own factual investigation and consideration of all of the circumstances in this case, including the views of minority citizens in the County, the fact that there are no defendant-intervenors, the affirmative steps taken by the County to increase voter participation, and the absence of evidence of discrimination in the electoral process within the County.

Approved as to form and content:

**For the Plaintiff PAGE COUNTY:**

J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, VA  22304
(703) 628-4673
DC Bar No. 447676

**For the Defendants MUKASEY and BECKER:**

MICHAEL B. MUKASEY
Attorney General

GRACE CHUNG BECKER
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

CHRISTOPHER COATES
ROBERT POPPER
CHRISTY McCORMICK
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC  20530
(202) 514-2386